1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
5805 Sepulveda Blvd. #801
Sherman Oaks, CA 91403
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARION KRAYZMAN individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>    v.<br><br>  YALLA VENTURES, INC.,<br><br>                              Defendant. | Case No.   2:24-cv-3610<br><br>**CLASS-ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Larion Krayzman ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Yalla Ventures, Inc., d/b/a PuroAir ("Defendant" or "PuroAir").   Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is an action arising from the false and misleading representations that Defendant made and continues to make about its PuroAir-brand Model 240 HEPA 14 Air Purifier (the "Air Purifier" or the "Product") and replacement filters. Defendant markets and sells the Product in multiple distribution channels, including but not limited to Amazon.com and on its own website (www.getpuroair.com).

2.      Specifically, Defendant represented that the Air Purifiers were equipped with High Efficiency Particulate Air (HEPA) filters and backed by scientists and lab testing, when in fact they were not.  Defendant also represented that the replacement filters it sells for the Air Purifiers are "HEPA 14" filters, when in fact they were not.

3.      Independent testing by Plaintiff's counsel has shown that the replacement filters and the filters inside the Product do not meet HEPA or H14 standards.

4.      Reasonable consumers have had no opportunity to find this out for themselves because they cannot conduct HEPA or H14 standard testing.

5.      Defendant knew this but continued hocking its wares, making a killing selling the Product *and* replacement filters.  Indeed, the Product is one of the best-selling home air purifiers on Amazon.  There is good reason to believe Defendant, as the Product does millions of dollars a month in sales on Amazon.com.  It is estimated

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    1

that Defendant made over 50 million dollars in sales from the Product *alone* in 2023.[1]

6.      But for Defendant's false and misleading claims, the fair value of its Product would have been substantially lower, *i.e.*, their market price would have been closer to non-HEPA filters, which sell at a discount relative to HEPA-rated purifiers.  This is doubly true for Defendant, which not only makes a "HEPA" claim but also an "H14" claim.  Defendant claims that Product's H14 filter "filters up to 99.99% of pet dander, smoke, allergens, dust, odors, and mold spores" "down to 0.1 microns in size," and that the H14 filter is "up to 10x more powerful than a HEPA H13 grade filter."[2]  As will be explained in more detail below, the efficacy of a H14 grade HEPA filter exceeds the efficacy of a H13 or even standard grade HEPA filter.

7.      Put differently, Defendant's HEPA misrepresentations allowed it to overcharge the class in the amount of the HEPA and HEPA 14-related price premium—even assuming there would be a market for Defendant's non-HEPA filters at all.

8.      Relatedly, Defendant's false and misleading representations induced reasonable consumers like Plaintiff into purchasing the Product.  Had Plaintiff and all other similarly situated consumers known that, contrary to Defendant's representations, the Product did not have a HEPA-grade filter, they would have paid less for the Product and replacement filters or not purchased them at all.

9.      Plaintiff is now seeking a return of the premium that Defendant charged for its Purifier, on behalf of himself and other similarly situated purchasers.  Plaintiff asserts claims on behalf of himself and all other similarly situated purchasers of Defendant's Product for: (i) violation of California's Unfair Competition Law

---

[1] https://housefresh.com/puroair-hepa-14-240-review/

[2] https://www.amazon.com/PuroAir-Air-Purifier-Bedroom-Allergens/dp/B0998FWTHP/ref=cm_cr_arp_d_product_top?ie=UTF8

("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (iv) breach of express warranty; (v) fraud; and (vi) unjust enrichment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

11.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California and has availed itself of the privilege of doing business in California.

12.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District, Plaintiff resides within this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

### A.    Air Purifiers And The Air-Purifier Market

13.     The Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States" in 2021 alone.  This pollution comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000 premature deaths in the United States each

year." Exposure to air particulates has also been linked to symptoms of depression, cognitive decline, and increased feelings of anxiety.

14.    Air pollution can also be a visceral reminder of human-driven climate change: the smoke from wildfires that have raged across both coasts of the United States since 2020 has quite literally blocked out the sun and forced millions of people indoors. For many, the smoke has exacerbated health conditions such as asthma or emphysema.

15.    As a result, public concern about air pollution is high. In fact, one 2019 survey found that, of about 1000 responses, 43% of respondents indicated that they had a "great deal" of concern about air pollution in the United States and 31% indicated that they had a "fair amount" of concern about air pollution. Taken together, 74% of respondents expressed concern about air pollution. This is in line with the EPA's concerns – the agency places indoor air pollution among the top five environmental health risks.

16.    Concern about air quality skyrocketed in 2020, however, as wildfires intensified and the airborne COVID-19 virus shut down the globe.

17.    As expected, consumer concern over airborne contaminants has helped the air-purifiers market explode, from $8.05 billion in 2019 to $13.97 billion in 2022: "the COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination. Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."[3]

18.    Air purifiers come in various forms. Among the most effective purifiers are those with HEPA filters. HEPA is an acronym for "High Efficiency Particulate

---

[3] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022 – 2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited Nov. 9, 2023).

---

1    Air." HEPA filters are strictly designed and must adhere to certain specifications to

2    be called a HEPA filter.



13        19.    Specifically, a HEPA filter is a type of pleated mechanical filter that

14    typically consists of sheets of randomly arranged fiberglass or plastic fibers held in

15    an accordion shape by aluminum separators. In America, to be called a HEPA filter,

16    the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any

17    airborne particles with a size of 0.3 microns (For HEPA filters in Europe, a different

18    filtration standard and naming convention is used, discussed further below). 0.3

19    microns is not the floor, however, it is the size at which a particle is most likely to

20    escape from the filter. Particles bigger or smaller than 0.3 microns have a greater

21    than 99.97% chance of being caught in a HEPA filter.

22        20.    According to the Centers for Disease Control and Prevention, HEPA

23    filters "are the most efficient filters on the market for trapping particles that people

24    exhale when breathing, talking, singing, coughing, and sneezing."[4]

---

26    [4] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving

27    Ventilation in Your Home, https://www.cdc.gov/coronavirus/2019-ncov/prevent-

28    getting-sick/improving-ventilationhome (last accessed April 3, 2024).

21.    Thus, for example, even though the SARS-CoV-2 virus is about 0.125 microns in diameter, the CDC has stated that "air purifiers can help reduce airborne contaminants, including viruses, in a home or confined space."[5]

22.    The reason why consumers care that the air purifier they purchase meets the HEPA standard is self-evident.  It offers near certain protection against the transmission of airborne pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter out pollution caused from events like wildfires, which are growing ever more frequent.

23.    Consumers want the assurance that the HEPA standard provides, and they are willing to pay more for HEPA filters, *i.e.*, consumers are willing to pay a premium for filters that meet the HEPA standard. A review of current sales prices, across brands that sell both HEPA and non-HEPA filters (what marketers sometimes call "HEPA-type" purifiers), indicates that HEPA purifiers sell—on average—at a 41% premium to non-HEPA filters within the same brand:

**TABLE A**

| Model | HEPA | | | Non-HEPA | | | HEPA premium |
|---|---|---|---|---|---|---|---|
| | Price | Coverage | Price/sf | Price | Coverage | Price/sf | |
| Molekule[6,] | $1,015 | 1,000 sf | $1.02 | $600 | 1,000 sq/ft | $0.60 | 41% |
| Holmes[7, 8] | $40 | 80 sf | $0.50 | $35 | 109 sq/ft | $0.32 | 36% |

---

[5] *Id.*

[6] Molekule, *Air Purifiers*, WWW.MOLEKULE.COM, https://molekule.com/collections/purifiers (last visited Nov. 9, 2023).

[7] Amazon, *Holmes True HEPA Allergen Remover Mini Tower Air Purifier with Optional Ionizer | Small Space Air Purifier, White (HAP706-NU-1)*, (URL Omitted for Space) (last visited Nov. 9, 2023).

[8] Amazon, *Holmes Desktop HEPA-Type, 3 Speeds plus Optional Ionizer small Air Purifier, HAP242B-U,* (URL Omitted for Space) (last visited Nov. 9, 2023).

| Crane[9, 10] | $90 | 250 sf | $0.36 | $61 | 300 sq/ft | $0.20 | 44% |
| Therapure[11, 12] | $180 | 200 sf | $0.90 | $180 | 343 sq/ft | $0.52 | 42% |
| **Average premium:** | | | | | | | **41%** |

24.    Being able to make a HEPA filtration claim is thus a huge boon for manufacturers, and they know it.  The HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration.

25.    Accordingly, the term "HEPA" is now ubiquitous in air purifier marketing, including Defendant's. Defendant knows that the phrase carries weight. It is a signal of quality to consumers that the air purifier they are buying is of a high grade and worth more than purifiers that do not have a HEPA filter.  Though consumers may not know the filtration efficiency requirements of the HEPA standard, or the technicalities of the various HEPA standard testing protocols, they recognize the HEPA acronym and have shown they are willing to pay more for air purifiers that have it in their marketing and labeling.  If having a HEPA filter was not material to consumers, then manufacturers like Defendant would not advertise the feature so heavily. In fact, given consumer preference for HEPA filters, there are

---

[9] Amazon, *Crane Air Purifier with True HEPA Filter, Germicidal UV Light, 250 Sq Feet Coverage, Timer Function, Sleep Mode, Washable Particle Filter, EE-5067*, (URL Omitted for Space) (last visited Nov. 9, 2023).

[10] WWW.AMAZON.COM, https://www.amazon.com/Purifier-Protection-EE-7002AIR-Functions-Replaceable/dp/B085J1R4M1 (last visited Nov. 9, 2023).

[11] Amazon, *ENVION Therapure TPP540 Medium to Large Room Filter HEPA Air Purifier with 3 Fan Speeds, LED Display, and 24 Hour Timer, Black*, (URL Omitted for Space)  (last visited Nov. 9, 2023).

[12] Amazon, *Boneco Envion Therapure Triple Action Purification Air Purifier Tower with HEPA-Type Filter, 343 Sq. Ft. Capacity*, WWW.AMAZON.COM, https://www.amazon.com/Envion-Boneco-Germicidal-Hemispheric-Purification/dp/B005BTVL76?ref_=ast_sto_dp&th=1 (last visited Nov. 9, 2023).

---

1
2
3
4
5
6
7
8
9
10
11
12



13    few, if any, non-HEPA filters left on the market, *i.e.*, there is little to no demand for

14    filters that do not meet the HEPA standard.

15    **B.    Defendant's Product And Advertising**

16
17        26.    At issue in this action is the PuroAir Model 240 HEPA 14 air purifier.

18        27.    The Product is a cylindrical device that accepts a circular filter.  It

19    retails for between $159.00 and $299.00, depending on the configuration selected.

20        28.    Defendant crafted multiple unique false and misleading representations

21    about the Product and replacement filters, including those set forth below in

22    Paragraph 29(a), (b), (d), (f), and (h) (the "HEPA Claims").

23        29.    For instance, Defendant made the following express representations in

24    the advertising for the Product.  All of these representations were found on the

25    Product's Amazon page (April 25, 2024):

26        a.  "HEPA 14 filter";

27        b.  "Filters up to 99.99% of pet dander, smoke, allergens, dust, odors, [and] mold spores";

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED    8

c. "Cleans 1,115 sq ft room in just 67 minutes";

d. "BACKED BY SCIENCE: 3rd party lab tested and certified. Proven to capture up to 99.99% of fine particulate matter down to 0.1 microns in size";

e. "Backed by scientists and virologists at Harvard, MIT, Johns Hopkins, and Oxford University";

f. "HEPA 14 FILTER Up to 10X more effective than common HEPA 13 filter";

g. "3rd Party Lab Tested & Certified"; and

h. "Captures up to 99.99% of fine particulate matter down to 0.1 microns in size".

Below are screenshots for the Air Purifier from its Amazon product page (continued next page):



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




30.    Substantially similar claims are found on the Product's physical packaging:



31.    Defendant touts the Product's "HEPA 14 Filtration" because it allows it to claim that the Product provides *better* filtration than a standard HEPA filter, a type of filter to which consumers already assign a premium.  This greater-than-HEPA-

filtration claim is precisely why Defendant charges $159.00 for the Product when most other competing air purifiers are between $50 and $100.[13]

32.     In essence, Defendant claims the Product provides better filtration than any other competing product, and charges accordingly.  Defendant's marketing campaign has worked.  It has allowed Defendant to surge to the very top of Amazon's sales charts, becoming the best selling Air Purifier on the site in 2023.

33.     Hundreds of thousands of consumers, including Plaintiff, have purchased the Product based on the HEPA Claims.  They were convinced that they were purchasing a high-quality, high-performance, premium product.  Unfortunately, they were duped.  Defendant's HEPA Claims are entirely fabricated.

**C.    Defendant's Product Is Tested And Fails To Meet The Minimum HEPA Standards**

34.     Around the beginning of 2024, Plaintiff's counsel commissioned a nationally recognized lab to test the Product.

35.      The testing was conducted in accordance with European and American testing protocols.  In America, the protocol used to establish HEPA-grade is IEST-RP-CC001.7.  In Europe, the protocol used to establish Europe's equivalent to HEPA-grade is the EN1822 test.  Both protocols test for a filter's ability to filter out fine particles, but they employ differing methodologies and naming conventions.

36.     The results of the EN1822 test are used to group filters into one of three classes: Efficient Particulate Air Filters (EPA), High Efficiency Particulate Air Filters (HEPA), and Ultra Low Penetration Air Filters (ULPA).  For purposes of the test, efficiency is defined as the filtration efficiency against the "most penetrating particle size."  Each class has subdivisions as well, depending on the filter's efficiency.  Thus, a filter tested under the EN1822 standard that could filter between 85% and 95% of particles at the most penetrating size would be classified as an EPA

---

[13] *See*, https://shorturl.at/yFJN8

10, or "E10" filter.  A filter that captures the most penetrating particles at a rate of 99.999995% would be categorized as a ULPA 17, or "U17" filter.  HEPA filters can be H13 (99.95%) or H14 (99.995%) before bumping up to the U15 class (99.9995% efficiency).

37.    For the American IEST protocol, to be classified as a HEPA filter, the filter must have a filtration efficiency of at least 99.97%.  Particles ranging in size from 0.1 microns to 5.0 microns are used in the test.  The test is done over eight stages, with each stage measuring the filtration efficiency for a subset of particle sizes (*i.e.*, measuring how the filter performs for particles between 0.1 and 0.2 microns).

38.    Defendant claims its Product is H14, which means that under the EN1822 standard the Product needed to filter out <u>at least</u> 99.995% of particles.  The results of the test are shown below in the left-hand chart.  All results that fell below the H14 standard are labeled in red.

39.    The results for the American IEST HEPA test are displayed below on the right.  To meet the HEPA standard the Product needed to filter out <u>at least</u> 99.97% of particles. All results that fell below the HEPA standard are labeled in red.

**EN1822 Results**

| Particle Size Range (µm) | Filtration Efficiency (%) |
|---|---|
| 0.0165 | 92.236 |
| 0.0190 | 91.982 |
| 0.0221 | 91.506 |
| 0.0255 | 92.242 |
| 0.0294 | 91.422 |
| 0.0340 | 91.582 |
| 0.0392 | 91.565 |
| 0.0453 | 91.006 |
| 0.0523 | 90.841 |

**IEST-RP-CC-001.7 Results**

| Particle Size Range (µm) | Filtration Efficiency (%) |
|---|---|
| 0.1 - 0.2 | 86.923 |
| 0.2 - 0.3 | 88.124 |
| 0.3 - 0.5 | 90.110 |
| 0.5 - 0.7 | 91.267 |
| 0.7 - 1.0 | 93.475 |
| 1.0 - 2.0 | 95.540 |
| 2.0 - 3.0 | 97.376 |
| 3.0 - 5.0 | 98.696 |

| | |
|---|---|
| 0.0604 | 90.728 |
| 0.0698 | 90.733 |
| 0.0806 | 90.622 |
| 0.0931 | 90.273 |
| 0.1075 | 90.186 |
| 0.1241 | 90.211 |
| 0.1433 | 89.957 |
| 0.1655 | 89.986 |
| 0.1911 | 89.734 |
| 0.2207 | 89.697 |
| 0.2548 | 89.350 |
| **0.2943** | **89.045** |
| 0.3398 | 89.326 |
| 0.3924 | 89.532 |
| 0.4532 | 89.612 |
| 0.5233 | 89.831 |
| 0.6043 | 89.855 |

40.    The Product failed *both tests* at <u>every single point of measurement.</u>  In fact, the Product was not even remotely close to meeting the H14 or HEPA standards.

41.    Under the EN1822 protocol, the Product's filtration efficiency at the most penetrating particle size (0.2943 microns) was 89.045%, a far cry from the 99.995% required for H14, resulting in a grade of E10, the lowest possible grade.

42.    The Product fared no better under the IEST-RP-CC001.7 standard.  At 0.3 microns, the Product's filter had an efficiency of 88.124%, far below the 99.97% threshold for the HEPA standard.

43.    Throughout the class period, Defendant made repeated express representations on the Product's packaging and in its marketing that the Product included a HEPA-grade filter that exceeded the HEPA standard.  Plaintiff's counsels' testing proves otherwise.  The filter in Defendant's Product performs nowhere near the HEPA standard.  Defendant's advertising is thus false and highly

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    14

1 | misleading to consumers like Plaintiff and the members of the classes he seeks to

2 | represent.

3 | **D.    Defendant's Claims About Room Coverage, Scientific Support, And**

4 | **Positive Reviews Are Fabricated**

5 | 44.    As part of the HEPA Claims, Defendant also claims that the Product

6 | "cleans 1,115 sq ft room in just 67 minutes."  This too is false.

7 | 45.    Plaintiff's counsel investigated this claim by looking at the Product's

8 | Energy Start Certification, which Defendant touts on the Product's Amazon page.

9 | *See supra* ¶ 34.  The Energy Star page flatly refutes the claim that the Purifier can

10 | clean anywhere close to 1,115 square feet in an hour.  In fact, Energy Star's testing

11 | found the Product can only clean a 284 square foot room in 60 minutes.[14]  It is

12 | impossible for the Product to cover an additional 831 square feet in just 7 minutes.

13 | 46.    Plaintiff's counsels' testing is in line with Energy Star's findings.

14 | 47.    What's more, on information and belief, the Product is <u>not</u> "[b]acked by

15 | scientists and virologists at Harvard, MIT, Johns Hopkins, and Oxford University."

16 | Though this claim is still up on Amazon, Defendant has recently removed it from its

17 | website.  Further, there is no evidence that the "Dr. Michael Kim" – whom

18 | Defendant quotes as stating the Product is "up to 10x more effective than the

19 | standard HEPA 13 filter" – has ever worked at Harvard University.

20 | 48.    It appears Defendant has a propensity for fabricating glowing quotes

21 | about the Product.  A website that routinely reviews home air purifiers recently

22 | (April 14, 2024) did a deep dive on the Product.  The reviewer stated they could not

23 | find the "quotes from big media published highlighted on the homepage of PuroAir's

24 | website" either.[15]  Ultimately, the reviewer concluded that the Product was "a terrible

25 |

26 | [14] https://www.energystar.gov/productfinder/product/certified-room-air-cleaners/details/3436212

27 |

28 | [15] https://housefresh.com/puroair-hepa-14-240-review/

air purifier for the price," which "duped" consumers into paying for it by "employing dishonest marketing claims."[16]

**E.    But For Defendant's HEPA Misrepresentations, Plaintiff And The Proposed Classes Would Have Paid Less For Their PuroAir Air Purifiers**

49.    By making the HEPA Claims about its Product, Defendant was able to overcharge the class in the amount of the premium associated with those claims.

50.    Defendant's HEPA Claims appeared on the packaging that its PuroAir Air Purifiers came in; appeared on the webpages where its Product was sold; and were baked into the name of the PuroAir "HEPA 14" Air Purifier itself. Accordingly, those specific claims were seen by most, if not all, purchasers of the Product and replacement filters.

51.    Defendant's HEPA Claims misled reasonable consumers. Defendant is one of the nation's leading air-purifier manufacturers, so consumers would reasonably believe Defendant's HEPA Claims; consumers do not and cannot typically test the accuracy of a HEPA claim before purchasing an air purifier; and Defendant's HEPA Claims were expressly false, not impliedly false (Defendant explicitly claimed that Defendant's air purifiers and filters meet the HEPA and H14 standards, that the Product was vetted by scientists, and that the Product can clean 1,115 square feet in 67 minutes), so no reasonable consumer would interpret Defendant's claims as making some kind of implicitly true statement.

52.    If Defendant hadn't made the HEPA Claims, then the market price of the Purifier and filters would have been lower, *i.e.*, those market prices would have been less than they were in the actual world, and closer to the price of "regular" HEPA or non-HEPA filters.

53.    Accordingly, Plaintiff and the proposed Classes paid for Defendant's Air Purifier at artificially inflated prices. In other words, Defendant's HEPA Claims

---

[16] *Id.*

allowed it to overcharge Plaintiff and the Classes, who were damaged in the amount of that overcharge.

## PARTIES

54.    Plaintiff Larion Krayzman is a citizen of California, and resides in the city of Encino, California.  While in California, Plaintiff Krayzman purchased the PuroAir Model 240 HEPA 14 Air Purifier from Defendant's Amazon store webpage on April 15, 2024 for $159.00 plus tax and shipping.  Plaintiff Krayzman reviewed the Product's Amazon page, saw Defendant's HEPA Claims, and relied on the HEPA Claims in making his purchase.  Plaintiff has a newborn child and purchased the Product thinking it would deliver superior filtration performance, and that the higher price-point ensured that he would receive a quality product that would perform better than competing HEPA Air Purifiers. Plaintiff Krayzman reasonably relied on Defendant's representations and believed that the Air Purifiers would filter contaminants at or above the HEPA or H14 standard.  Had Defendant not made the HEPA Claims, Plaintiff Krayzman would not have purchased the Product or would have paid substantially less for it.

55.    Defendant Yalla Ventures, Inc. is a Delaware corporation with headquarters in Phoenix, Arizona.

## CLASS ALLEGATIONS

56.    ***Class Definition***.  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and all other similarly situated consumers, and seeks to represent a class (the "Class") defined as:

> All persons in the United States who purchased a PuroAir Model 240 air purifier or replacement filter during the applicable statutory period.

57.    Plaintiff Krayzman also seeks to represent a California subclass defined as follows (the "California Subclass"):

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    17

All California residents who purchased a PuroAir Model
240 air purifier or replacement filter during the
applicable statutory period.

58.    The Class and California Subclass are collectively referred to as the

"Classes."  Excluded from the Classes are governmental entities, Defendant,

Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-

conspirators.  Also excluded is any judicial officer presiding over this matter and the

members of their immediate families and judicial staff.

59.    Plaintiff reserves the right to modify or expand the definition of the

Classes to seek recovery on behalf of additional persons as warranted as facts are

learned in further investigation and discovery.

60.    ***Numerosity.***  Members of the Classes are so numerous that their

individual joinder herein is impracticable.  The precise number of Class members

and their identities are unknown to Plaintiff at this time but will be determined

through discovery of Defendant's records.  Class members may be notified of the

pendency of this action by mail, email, and/or publication/other media, including

social media.

61.    ***Commonality and Predominance.***  Common questions of law and fact

exist as to all Class members and predominate over questions affecting only

individual Class members.  These common legal and factual questions include, but

are not limited to:

a.  Whether the Product is in fact HEPA or H14-grade;

b.  Whether Defendant's HEPA Claims included false and/or
misleading statements and/or omissions;

c.  Whether Defendant knowingly made false HEPA Claims about the
Product;

d.  Whether Defendant's HEPA Claims were material;

e.  Whether an objectively reasonable consumer would have been
misled by Defendant's HEPA Claims; and

f. Whether Defendant's HEPA Claims allowed it to charge more for the Product than it otherwise could have.

62. **Typicality.** Plaintiff's claims are typical of the claims of the proposed Classes he seeks to represent because Plaintiff, like all members of the Classes, was induced by Defendant's false and misleading HEPA Claims to purchase Defendant's Product and subsequently did purchase one of Defendant's Product during the relevant periods without knowing that the HEPA Claims were false and misleading. Plaintiff, like all members of the Classes, has been damaged by Defendant's misconduct in the very same way as the members of the Classes. Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

63. **Adequacy**. Plaintiff is an adequate representatives of the Classes he seeks to represent because his interests do not conflict with the interests of the members of the Classes, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

64. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individual litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individual litigation also represents a potential for inconsistent or contradictory judgments. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on

the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Business & Professions Code § 17200, *et seq.*

65.     Plaintiff Krayzman hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

66.     Plaintiff Krayzman brings this claim individually and on behalf of the proposed California Subclass against Defendant.

67.     This claim is brought under the laws of California.

68.     Defendant violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.,* violating each of the three prongs of the UCL).

**The Unlawful Prong**

69.     Defendant engaged in unlawful conduct by violating the CLRA and FAL as referenced herein.

**The Fraudulent Prong**

70.     As alleged in detail above, Defendant knew its HEPA Claims were material to consumers and also knew the HEPA Claims were false and misleading. Despite this, Defendant continued to make the HEPA Claims to induce Plaintiff and the California Class to purchase the Product .

71.     Defendant, as manufacturer and marketer of the Product, was in a position to know the true quality and capability of its Product yet affirmatively made the HEPA Claims despite knowing they were false and misleading.

72.     As a result of these false and misleading practices, Defendant induced Plaintiff Krayzman and the California Subclass to purchase the Product that Plaintiff Krayzman, the members of the California Subclass would not have purchased, or

would have paid substantially less for, had Defendant been truthful about the quality and capability of its Product.

***The Unfair Prong***

73.    Defendant's conduct was unfair because, by making the HEPA Claims, Defendant deceived consumers into believing that the Product's filters and replacement filters were HEPA or H14 grade and backed by scientists and studies. This is unfair because it led Plaintiff Krayzman and the members of the California Subclass to purchase the Product that they otherwise would not have, or would have paid substantially less for, had the Product not been advertised with the HEPA Claims. Defendant's misleading practice was also unfair because it gave Defendant an unfair advantage over competitors to the extent that Defendant's Air Purifier is one of the best-selling home air purifiers on Amazon.com, doing millions of dollars in sales per month.

74.    Plaintiff Krayzman and the California Subclass members could not have reasonably avoided the injury. Only Defendant was aware that its Air Purifiers fell below the standard that it claimed.

***

75.    For all prongs, Defendant's false and misleading conduct was intended to induce reliance, and Plaintiff Krayzman and members of the California Subclass saw, read, and reasonably relied on Defendant's HEPA Claims. Defendant's deceptive, misleading, and unfair conduct was a substantial factor in Plaintiff Krayzman and the California Subclass's purchasing decisions.

76.    Defendant's HEPA Claims were a substantial factor and proximately caused the damages and loss to Plaintiff Krayzman and the members of the California Subclass.

77.    There was no benefit to consumers or competition from falsely claiming that the Product was of a quality that they were not.

78.    Plaintiff Krayzman and the members of the the California Subclass have

suffered harm as a result of Defendant's violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendant conducted its business in a lawful and truthful manner.

## COUNT II
### Violations of California's False Advertising Law ("FAL")
### Business & Professions Code § 17500, *et seq.*

79.    Plaintiff Krayzman hereby incorporates by reference the allegations contained in the proceeding paragraphs.

80.    Plaintiff Krayzman brings this claim individually and on behalf of the proposed California Subclass against Defendant.

81.    This claim is brought under the laws of California.

82.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or service, … or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

83.    During the applicable statutory period, Defendant committed acts of false advertising, as defined by the FAL, by the HEPA Claims to attract more purchasers than its Product would otherwise have received.  Likewise, Defendant's false HEPA Claims induced consumers to purchase the Product and replacement filters or pay more for the Product and replacement filters than consumers otherwise would have.

84.    Defendant knew or should have known, through the exercise of reasonable care, that its HEPA Claims were untrue and misleading.

85.    Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

86.   As a direct and proximate result of these acts, consumers have been and are being harmed, including Plaintiff and members of the California Subclass. Plaintiff Krayzman and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff Krayzman and the California Subclass would not have purchased Defendant's Product or would have paid substantially less for the Product had Defendant not advertised them with the HEPA Claims; (b) Plaintiff Krayzman and the California Subclass paid an increased price for the Product based on the HEPA Claims; and (c) the Product did not confer the value they promised to confer because they did not actually contain greater than HEPA-grade filters.

87.   Plaintiff Krayzman and the California Subclass are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of their deceptive practices; (b) interest at the highest rate allowed by law; and (c) the payment of Plaintiff's attorneys' fees and costs.

## COUNT III
**Violations of California's Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code § 1750, *et seq.***

88.   Plaintiff Krayzman hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

89.   Plaintiff Krayzman brings this claim individually and on behalf of the proposed California Subclass against Defendant.

90.   This claim is brought under the law of California.

91.   Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

92.   Plaintiff Krayzman and members of the California Subclass are "consumers," as defined by Cal. Civ. Code § 1761(d).

93.   The Products purchased by Plaintiff Krayzman and the California Subclass members are "goods" as defined by Cal. Civ. Code § 1761(a).

94.    The purchases by Plaintiff Krayzman and the California Subclass members constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

95.    As alleged more fully above, Defendant has violated the CLRA by furnishing the false and misleading HEPA Claims about its Product and replacement filters to attract and induce consumers to purchase its Product and replacement filters.  Absent the HEPA claims, consumers would not have purchased the Product and replacement filter or would have paid substantially less for them.

96.    As a result of engaging in such conduct, Defendant has violated California Civ. Code §§ 1770(a)(5), (a)(7) and (a)(9).

97.    Defendant's conduct was likely to deceive, and did deceive, Plaintiff Krayzman and the California Subclass members, all of whom are reasonable consumers.  Defendant knew, or should have known through exercise of reasonable care, that its HEPA Claims were false and misleading.

98.    Defendant's HEPA Claims were intended to induce reliance, and Plaintiff Krayzman and the California Subclass members saw, read, and reasonably relied on the HEPA Claims when deciding to purchase Defendant's Product and replacement filters.  Defendant's deceptive conduct was a substantial factor in Plaintiff's purchase decision and the purchase decisions of the proposed California Subclass.

99.    Plaintiff Krayzman and members of the California Subclass have suffered harm as a result of these violations of the CLRA because they incurred charges and/or paid monies for the Product and replacement filter that they otherwise would not have incurred or paid.

100.    In compliance with the provisions of California Civil Code § 1782, Counsel for Plaintiff Krayzman sent written notice to Defendant on April 23, 2024, informing Defendant of his intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and

desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

## COUNT IV
### Breach of Express Warranty, U.C.C. § 2-313

101.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

102.    Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

103.    In connection with the sale of the Purifiers, Defendant, as the producer, marketer, distributor, and/or seller issued written warranties by representing the following about the Product and replacement filters:

    a.  "HEPA 14 filter";

    b.  "filters up to 99.99% of pet dander, smoke, allergens, dust, odors, [and] mold spores";

    c.  "Cleans 1,115 sq ft room in just 67 minutes";

    d.  "BACKED BY SCIENCE: 3rd party lab tested and certified. Proven to capture up to 99.99% of fine particulate matter down to 0.1 microns in size";

    e.  "Backed by scientists and virologists at Harvard, MIT, Johns Hopkins, and Oxford University";

    f.  "HEPA 14 FILTER Up to 10X more effective than common HEPA 13 filter"

    g.  "3rd Party Lab Tested & Certified"; and

    h.  "Captures up to 99.99% of fine particulate matter down to 0.1 microns in size".

104.    Plaintiff and the Class Members relied on these statements in making their purchasing decisions.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    25

105.    In fact, the Purifier does not conform to these representations because none of these claims were true.  As described more fully above, the Purifier was tested and shown to perform well below the HEPA or H14 level, and is not backed by any scientists or studies.

106.    Plaintiff and the members of the  the Class were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Purifier if they had known that Defendant's representations about the Purifier were false, and (b) they overpaid for the Product on account of the misrepresentation.

107.    Plaintiff's counsel notified Defendant of his claims in a demand letter shortly after learning about its breach of warranty, sent via certified mail, with return receipt requested, on April 23, 2024.

108.    The demand letter was sent within a reasonable time after Plaintiff discovered Defendant's breach and learned of the nature of Defendant's practices. The letter therefore complied with all respects of U.C.C. § 2-607.

## COUNT V
### Fraud

109.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

110.    Plaintiff brings this claim individually and on behalf of the members of the Class.

111.    As alleged in detail above, Defendant knew that the HEPA Claims were material to consumers.  Defendant also knew the HEPA Claims were false and misleading, yet continued to make the HEPA Claims.

112.    Defendant was in a position to know the HEPA Claims misrepresented the true quality and capability of its Product yet continued to make the HEPA Claims despite this.

113.    Defendant's false and misleading HEPA Claims, upon which Plaintiff and the members of the Classes relied, were intended to induce and actually did

induce Plaintiff and the members of the Classes to purchase the Product and replacement filter.  Had Plaintiff and the Class members known the truth about the Product and replacement filter, they would not have purchased the Product and replacement filters or would have paid substantially less for them.

114.   Defendant's fraudulent actions caused damages to Plaintiff, the Class, and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
**Unjust Enrichment**

115.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

116.   Plaintiff brings this claim individually and on behalf of the members of the Class or, alternatively, the California Subclass.

117.   As alleged in detail above, Defendant knew that the HEPA Claims were material to consumers.  Defendant also knew the HEPA Claims were false and misleading, yet continued to make the HEPA Claims.

118.   Defendant was in a position to know the HEPA Claims misrepresented the true quality and capability of its Product yet continued to make the HEPA Claims despite this. Substantial benefits have been conferred on Defendant by Plaintiff and the Classes through the purchase of the Product.  Defendant knowingly and willingly accepted and enjoyed these benefits.

119.   Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Product would contain HEPA or H14 filters.  As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

120.   Defendant's acceptance and retention of these benefits of the payments from Plaintiff and the Classes under the circumstances alleged herein make it

inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Classes.

121.   Plaintiff and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed Classes the following relief against Defendant:

(a)    For an order certifying the Class and California Subclass and naming Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For an order requiring Defendant to undertake a corrective advertising campaign;

(g)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(h)    Granting such other and further relief as many be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Dated:  May 1, 2024                    **BURSOR & FISHER, P.A**.

                                       By:   _/s/ L. Timothy Fisher_
                                             L. Timothy Fisher

                                       L. Timothy Fisher (State Bar No. 191626)
                                       Luke Sironski-White (State Bar No. 348441)

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    28

1
2
3
4
5

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

6
7
8
9

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
5805 Sepulveda Blvd. #801
Sherman Oaks, CA 91403
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

10
11

*Attorneys for Plaintiff*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff Krayzman resides in this District.

3.      Plaintiff Krayzman is a resident of Encino, California.

4.      Defendant Yalla Ventures, Inc. is a Delaware company with its principal place of business in Phoenix, Arizona.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on May 1, 2024, at Walnut Creek, California.

*/s/ L. Timothy Fisher*
L. Timothy Fisher
